Argued January 14, decided February 3, 1914.

## LUCKEY *v.* THOMPSON.

(138 Pac. 454.)

**Intoxicating Liquors—Local Option Election—Effect of Irregularities.**

A local option election resulting in majority of 59 in favor of prohibition is not vitiated by a showing that 79 qualified electors failed to vote, of whom 45 were prevented from voting by the wrongful action of the election board in refusing the votes of those who had not resided in the town for three months before the election; no explanation being given as to the reason for failure of 25 of the electors to vote.

[As to power of election officers with respect to rejection of votes offered, see note in Ann. Cas. 1913D, 1245.]

From Lane: LAWRENCE T. HARRIS, Judge.

This is a suit by T. C. Luckey against Helmus W. Thompson, R. J. Hemphill and George M. Hawley, comprising the County Court of Lane County, Oregon. From a decree in favor of defendants, plaintiff appeals. The facts are set forth in the opinion of the court.                AFFIRMED.

For appellant there was a brief over the names of *Mr. E. B. Seabrook, Mr. A. M. Dibble* and *Mr. John C. Mullen,* with oral arguments by *Mr. Seabrook* and *Mr. Dibble.*

For respondents there was a brief over the names of *Mr. G. F. Skipworth, Mr. J. H. Bower* and *Mr. J.*

*M. Devers,* with oral arguments by *Mr. Skipworth* and *Mr. Bower.*

In Banc.   MR. JUSTICE EAKIN delivered the opinion of the court.

This is a suit to enjoin the County Court of Lane County from canvassing the vote cast at the local option election held in the town of Springfield on November 4, 1913, which resulted in a majority of 59 votes for prohibition, and from making the order prohibiting the sale of intoxicating liquors in said town. But one question is presented by this appeal, namely, as to the effect upon the result of the election of the ruling of the election board in refusing to receive the votes of any electors who had not been resident in the town of Springfield for the period of three months next preceding the election. By Section 27 of the Charter of the said town it is provided (Sp. Laws 1893, p. 249): ''No person shall be entitled to vote at any municipal election who has not been a resident of Springfield for the three months next preceding such election.'' The election board enforced that qualification in good faith. It seems to be conceded, at least by the Circuit Court, that the residence qualification of the voters contained in the charter was beyond the power of the legislature to prescribe, and therefore we need not discuss it. This question was tried out by the court, and from the evidence he finds that ''79 [persons named by plaintiff as voters] were legal voters, and had a right to vote on the local option question. These 79 legal voters may be classified as follows: (1) Persons whose ballots were rejected, 15; (2) persons advised by board that three months' residence necessary, 8; (3) persons who did not go to polls because of hearing of the rulings made by the boards as to residence, 19; (4) persons who went to polls to vote, but heard from persons, other than members of

board, how the boards were ruling on the question of residence, 3; (5) persons who did not go to the polls because of what they heard before the day of election, 9; (6) persons who did not vote, or attempt to vote, no reason or explanation being given, 25.'' This finding we accept as a fact. The fact that the judges of election refused the votes of all electors who had not resided in the town of Springfield three months prior to the election can defeat the election only if such ruling prevented said legal voters from offering their votes when such votes, if received, would have changed the result, or have left it in doubt: *Scranton Borough Election,* Bright. Elec. Cas. 455. The contention of plaintiff is that, where a body of voters is denied the privilege as a class, when numerous enough to have changed the result, the election is rendered invalid; and he relies upon the case of *Coggeshall* v. *City of Des Moines,* 138 Iowa, 730 (117 N. W. 309, 128 Am. St. Rep. 221). That case is not in point with this case as to the influences causing the result. There the city election officers stated to the attorney for the Political Equality Club that women were not entitled to vote, and no provision would be made for them. This was reported to the club and to the representatives of clubs composed of about 1,200 members. There were over 19,000 women voters in the city. The election resulted in a majority of only 620 votes. The daily press discussed the matters before the election quite extensively, and gave it the widest publicity. By reason of such circumstances a large class of voters, many times the majority vote, was denied the right of suffrage. The trial judge in the present case finds that but 45 legal voters were affected by the ruling of the board; that of those qualified 25 did not attempt to vote, nor was their absence shown to be due to the ruling of the board, or otherwise accounted for. The trial judge says the action and ruling of the board of election pre-

vented 45 voters from having their ballots counted, and that this number is less than the majority given for prohibition.    Thus it seems that these rulings are not shown to have influenced a sufficient number of voters to have affected the result.    We agree with the conclusion of the Circuit Court.

We find no error in the decree, and it is affirmed.

AFFIRMED.